## Manoah S. Long, Plff. in Err., *v.* William Trexler.

A judgment in trespass on the case recovered by a lower against an upper riparian owner, for diminishing the natural flow of the stream and polluting it by ore washing and mine drainage, although entered on a verdict which did not specify the causes for which damages were assessed, is, in a subsequent action for a continuance of the same acts, conclusive evidence that the defendant has no right to divert the water of the stream.

The pollution of the stream by mine drainage is *damnum absque injuria,* but, although considered in the former action, bore on the measure of damages only, and did not affect the validity of the judgment for the purpose of estoppel.

(Argued March 3, 1887.   Decided March 14, 1887.)

January Term, 1887, No. 301, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   Error to the Common Pleas of Berks County to review a judgment on a verdict for the plaintiff in an action of trespass on the case.   Affirmed.

The facts, as they appeared at the trial before ERMENTROUT, J., are stated in his charge to the jury.

The plaintiff offered in evidence, *inter alia,* the record of a former suit, No. 19, October term, 1877.   The offer was made in the following terms: "The declaration sets out that hereto-

---

NOTE.—Similar determinations are found in Rockwell v. Langley, 19 Pa. 502; Whetstone v. Bowser, 29 Pa. 59; Bush v. Gamble, 127 Pa. 43, 17 Atl. 865; Hartman v. Pittsburg Incline Plane Co. 2 Pa. Super. Ct. 123, 39 W. N. C. 27, 27 Pittsb. L. J. N. S. 146; Hartman v. Pittsburg Incline Plane Co. 11 Pa. Super. Ct. 438.   As to pollution of stream by mining operations, including drainage of mines, see Farnham, Waters, pp. 1694–1698.   For a presentation of the Pennsylvania rule, with regard to the pollution of water by the drainage of mines, see the same author at p. 1699.

fore, to wit, on the 10th of September, 1877, to October term, 1877, No. 19, a certain suit or action was instituted in the court of common pleas of Berks county, in which William. Trexler, the present plaintiff, was plaintiff, and Manoah S. Long, the present defendant, was defendant; in which suit a declaration was filed setting forth in substance, as follows:

The cause of action—which is substantially the same subject matter as is embraced in the present suit; the declaration goes on and sets out in substance that the plaintiff was possessed of certain premises in the county of Berks, including a messuage and tract of land, and a tannery and a dam; that a stream of water had for many years flowed through the premises and into the dam, and that the water was originally pure and unadulterated and abundant in quantity, and that it came to the premises in that condition; that the said defendant diverted large quantities of water from the stream and thereby lessened the amount of the water, and that he also fouled the water by means of mining operations; that in consequence of the fouling of the water it, as it flowed throug'h the plaintiff's premises, became likewise foul and corrupt and diminished in quantity, and that he sustained damage on account of these acts of the defendant. That is set out as being the statement of what was tried in the former suit.

We propose further, then, to show that there was a declaration filed embracing substantially what I have stated, that the defendant filed a plea to issue; that the case was tried in 1880, and that there was a verdict for the plaintiff for a small sum of damages; that upon the verdict judgment was entered, and that no appeal was ever taken, at least that is the inference from the record; that we offer in evidence now as the basis of the proceeding in this case, and to show the liability of the defendant for a continuation of the same acts as were established in the former suit; the plaintiff averring that the present action is brought for a continuation of the nuisance or wrongful acts which the defendant then did, and for which a verdict was found against him.

The defendant objected: "(1) The cause of action set out in the declaration in the suit now offered in evidence is not the same as the cause of action set out in the declaration in the suit

now trying; (2) the plaintiff does not declare in the same right in the present suit as the declaration in the suit of No. 19, October term, 1877; (3) the offer is generally irrelevant, incompetent, and inadmissible."

Objection overruled; exception.

The court charged as follows:

Sometime in September, 1877, the present plaintiff instituted an action on the case against the present defendant.   The action began on the 10th of September, 1877; and in the pleadings in the case the injury alleged to have been inflicted is stated as beginning the 15th of October, 1871, and continuing from that time until the bringing of the action; or, in other words, for a period of about six years.

The cause of action, as disclosed by the *narr.,* is, first, a diversion of the stream and the use of it, whereby the water is materially diminished in quantity, to the injury of the plaintiff's property; second, that by using the water for the purpose of washing ore, the defendant polluted and fouled the stream running through the land of the plaintiff; and in addition to these two causes of action, the *narr.* states that there was added to the stream other water pumped from the ore workings and mines on defendant's land, thereby also polluting the stream, to the injury of the plaintiff's property.

Upon a trial of that cause, on the 23d of September, 1880, the jury found a general verdict of guilty, and for the injury, in the *narr.* set forth as continuing for this space of six years, the jury assessed the damages at $231.   It does not appear anywhere what damages were assessed for each particular branch of the alleged injury.

It is now alleged that the defendant continued all these special injuries, and this present suit is brought to recover for a period beginning the 29th of December, 1878, to December 29, 1884, another period of six years.   Some counts of the plaintiff's declaration in this case allege it as an old nuisance continued; and there are other counts which allege it as simply a nuisance, without referring to the former action.

Counsel for both plaintiff and defendant have presented points to the court in which they claim that the law governing this case is set forth; and they ask the court to instruct the jury as re-

quested in these different points. I will answer the points before proceeding with the general charge.

The plaintiff's counsel respectfully request the court to instruct the jury, as follows:

1. The plaintiff having given in evidence the verdict and judgment in a former action, between the same parties, for the same subject-matter, *viz.,* for the diversion and corruption by the defendant, in mining and cleansing iron ore, of the water of a certain stream flowing through plaintiff's premises, in which said action the verdict and judgment were in favor of the plaintiff, and the present action being for a continuance of the same wrongful acts, the record of said former action is conclusive of the plaintiff's right to recover in the present suit, upon showing to the satisfaction of the jury that the defendant continued to divert and corrupt the water of said stream in the same way as he had previously done. The question of his legal liability for such acts cannot be retried.

This point is affirmed, if the jury so find the facts; but is not to apply to any water pumped from the mines in its natural character with impurities arising from natural, not artificial, causes.

2. Under such circumstances the only question to be considered by the jury is as to whether the defendant has continued the diversion and corruption of the water of the stream since the former action in 1877; and if the evidence satisfies the jury that such is the fact, it will be their duty to find a verdict for the plaintiff for such damages as he is legally entitled to recover from the defendant for his proportionate share of the injury.

This point is affirmed, if the jury find such circumstances to exist, with the qualification as to the water pumped from the mines in its natural condition, as stated in the answer to the first point.

3. If, after the plaintiff's right to recover has been established by a verdict and judgment in his favor, the defendant continued the wrongful acts complained of in the first suit, it is the duty of the court to instruct the jury to give such damages as will deter him from continuing the same, though such sum be in excess of the actual damages suffered.

4. The defendant having admitted himself that since the former action he has continued to divert large quantities of the water of the stream flowing through the plaintiff's premises for washing ore, of which it was shown that but a small amount re-

turned to the stream, it is no answer to say that he pumped an equal or greater quantity into the stream from the water accumulated in the mine.

The principle contended for we affirm, if the jury so find the facts.

5. Even should the court be of opinion that in a case where the mining of ore could not be carried on without discharging the water collected from the percolations of the mines into the stream, such discharge would be *damnum absque injuria,* there is no sufficient evidence of such existing necessity in the present case.

We decline to charge as requested in this point.

The defendant's points are as follows:

The court is requested to charge the jury:

1. That the defendant's use of the water from the stream for carrying on his mining operations was a reasonable and rightful use of the stream; and there being no evidence of negligence in conducting these operations, but the testimony being that the use of the water for washing ore was the ordinary and reasonable use of the country, in conducting mining operations, the inconvenience and injury to the plaintiff is *damnum absque injuria.*

This point we decline to affirm.

2. If the jury believe that the inconveniences to the plaintiff are slight, and that he has sustained no material and appreciable injury from the use made by the defendant of the water taken from the stream in washing his iron ore. then the verdict must be for the defendant.

This point we affirm.

3. If the jury believe that owing to the distance and the intervening dams between plaintiff's property and defendant's the discoloration and sediment in the water from defendant's use of it at the ore washing would disappear, were it not for the operations using the same water between defendant's and plaintiff's property, then the defendant is not liable for the injury complained of, and the verdict must be for the defendant.

This we affirm.

4. If the jury believe that the discoloration and sediment in the water when it reaches plaintiff's property was due to the water pumped from the defendant's and other mines, and that it was necessary to pump this water from his mine, in order that

he might operate it, then the defendant is not liable for the injury complained of, and the plaintiff cannot recover.

This point we affirm, on the theory, however, that it applies only to such water as the mine naturally discharges, or to the natural percolations of mine water into the mines, and with the impurities arising from natural, not artificial, causes; and upon the further theory that in this case the jury should find no other cause of injury.

5. That as the defendant received the water on his land affected by similar ore washers above on the stream, if liable at all it would only be for increasing the impurities in the water by operations on his own lands; and if the jury find that the defendant received the water pure and clear, and that but for the action of other operations lower down the stream, the stream would be freed from impurities before it reached plaintiff's land, then the plaintiff cannot recover.

Affirmed.

6. Should the jury believe that the plaintiff has sustained appreciable injury, the defendant would be liable only to the extent that his mining operations contributed thereto; and if that alone did not cause appreciable and material injury to the plaintiff, but only slight inconvenience, the verdict must be for the defendant.

Affirmed.

[In addition to the legal instructions contained in these points, we further say to you that the owner of lands through which a stream of water passes, while he has the right to use the water for any legal purpose, must return it to the channel uncorrupted and without essential diminution in quantity, for the benefit of the owner of the land along its banks below him. If he employs it for ordinary domestic purposes, and the stream is so small that all is consumed, although its loss would be an injury to the land below, yet it is an injury for which the law gives no damages; but where he employs it for manufacturing or other purposes, having no necessary relation to the use of the land, he is liable to an action by the owner of the lower land. For such purposes he can neither corrupt the water nor sensibly diminish its volume at the expense of his neighbor, although he may think it necessary for manufacturing, or washing ore.]

When a jury approaches a case of this character, they will be careful to keep in view the magnitude of the interests that are

involved. The section where these operations are carried on is a mining country. There are, within a half mile, along this stream alone, as disclosed in this testimony, some seven operations, in which a vast amount of iron ore is handled, a great number of men employed, and the iron ore industry is a vast and important one.

The proprietors of large and useful interests, such as mining of coal or iron ore, should not be hampered or hindered for trifling or trivial causes. For slight inconveniences or occasional annoyances, they ought not to be held responsible. But when material and appreciable injuries, such as damages to land, actual diminution, appreciable diminution of streams are shown, when such injuries have been sustained, a recovery of damages against them ought to be allowed, just as against any other person,—because a rule of law should be for all men; and all interests, mining and agricultural, should be treated impartially.

In estimating the damages, if the jury find that any damages were sustained, there is a general rule laid down; that is, that the measure of damages is compensation for the injury that may have been sustained by the acts complained of. If the injury result from grossly negligent or malicious acts, or is caused by the persistent action of a man whose rights to do such acts have been legally determined against him, larger damages may be given by way of punishment; and the amount of such damages, which in law are called punitive damages, or exemplary damages, rests in the sound discretion of the jury, uninfluenced by prejudice or passion.

We further say to you that the defendant, being the owner of the land, had a right to mine his iron ore, or permit his lessees to do so; and if this right was exercised in the ordinary and usual mode of mining and with due care, so far as the water pumped up from the mine is concerned, there is no liability for permitting the natural flow of mine water, either to run away from the land or to be pumped up from the mine into the creek, which, from the testimony, seems to be the natural drainage of that section.

In all mines there are percolations, or drippings, or runnings from the water which accumulates; and this water must be discharged, or mining would cease. A man is permitted to get rid of this natural flow of water, and the defendant had a right to lift this water to the surface by artificial means, such as pump-

ing, and let it into the creek. He may not foul it by any act of his own. He may not use it as a sewer for the mere purpose of throwing dirt, or in such a way as to throw the soil upon the land of his neighbor. He may not do that either by his own act or by the act of his servants. But if the impurities in the water which he thus conveys from the mine arise from natural, and not artificial, causes, without any fouling on his part, or any act done whereby to alter the nature and condition of this water,— that is, the natural impurities that water may receive in percolating through the mines,—he may pump that out, although it may, by its natural impurities, defoul the creek. And, therefore, so far as this case is concerned, when you come to consider any injury which you find attributable to that source, you would exclude that special injury from your consideration.

Taking the evidence submitted on the part of the plaintiff, if believed, and it is for the jury to pass upon the evidence, its effect would be that the streams below were muddy; that the impurities in the creek affected his leather in the tannery; the deposits settled in his dam at his grist mill; that the water for domestic purposes at the dam at his house was polluted in the same way. There were a good many witnesses called, and it is unnecessary to give their testimony in detail, because the jury will well recollect that, inasmuch as this case has not taken so many days.

If, under a consideration of the plaintiff's testimony, you find that this defendant, taking into consideration the testimony on both sides, is guilty of inflicting such injuries for which the law allows damages, as we have before stated, you would apply the rules we have indicated in ascertaining the damages. You will ascertain what damages were sustained by the alleged diverting of the stream, the appreciable diminution in the quantity and the pollution of the water. You will inquire how the acts complained of may have affected the use and enjoyment of the plaintiff and his property; and in the case of any permanent injury, you will inquire how the acts complained of affect the property in its value. So far as the mere diversion of a stream is concerned, that diversion may be simply temporary in its character; for when the stream is no longer diverted, the injury ceases; and then you would inquire what damage was done by its diversion and the diminution in quantity.

When you come to examine into the question of any deposits

that may have been made of mud, soil, or otherwise, if there were any such deposits made, you will inquire whether they have affected the value of the property permanently, and ascertain to what extent. You will also, at the same time, ascertain what would be the cost of the removal of such deposits; and whichever way shows the lesser damages, you are to accept as the true measure. In other words, if the difference in value, caused by the permanent injury, is, we will say, in illustration, $100, and the cost of removal is $50, you would take the $50; if the cost of removal were $150, and it should be testified that the depreciation in the value of the property were but $100, you would take the $100.

You will bear in mind that the plaintiff is the owner of farms there, a tannery, a grist and sawmill; the dams are there all erected; there is a valuable water power there. So far as the properties which the plaintiff has leased are concerned, you will not allow anything for diminishing the annual profits to the tenant. Such profits and damages belong to the tenant, and not to the owner. The tenant may sue for those; but the owner simply sues for the damages which he suffers in his reversionary interest.

If, under all this evidence, you find that there was an injury committed, and you proceeded in the way indicated to ascertain the amount of the damages, you will further bear in mind that the estimates of damages alleged to have been committed contained all the damages that are alleged to have been actually suffered during these six years.

When Colonel Trexler was upon the stand he said that he did not claim that these acts were due to the defendant alone. There are, according to the testimony, some seven operators upon that stream; and all of them seem to be carrying on mining operations in pretty much the same way. Some of the witnesses say that it is necessary to go away above the operations of the defendant, past the others, to get clear water; and that when the water reaches Long's, it is muddy both above and below; and some of the witnesses say that the stream is oftener clear than muddy, and others say oftener muddy than clear.

Therefore it is that you must, in the best way you can, apportion what you may find to be the proper amount of damages caused by the act of the defendant; for he is not liable for what

the others have done, but only for his proportionate share. It is, of course, difficult to get at that. You can hardly do it exactly, but you will approximate to it as near as you can; and you must use your good judgment and sound discretion in getting at the true measure.

Now, the defendant alleges, on the other hand, that he has not inflicted the injuries complained of; and, for the purpose of establishing his theory of the case, he calls witnesses who give to you an account of how the mining operations are there carried on. They have described to you the course of the mine from the pit to the washery, and the washery and the mud dam. They have told you that unless there is a heavy rain in that neighborhood, the water in the pit is generally clear; that the water in this stream—there is no contention about that—is taken up, used in the washery in washing the ore; and they allege that the sand and dirt are separated, the sand first by means of the washery and screens connected with it; and from that the muddy water flows into the mud dam where it is allowed to settle; and that the water in its clear state is then taken from the mud dam and put into the creek; and that there is no pollution of water arising from that source; and they further testify to you that this creek is the natural drainage of that country, that on either side of the creek the land slopes, and that whatever washings there may be after rains pass into this creek; and the defendant alleges that the water is fouled in that way.

There is testimony to the effect that during these six years a mud dam below the defendant broke, and that by that means great quantities of mud were washed into the stream; that there was a freshet in 1883 of so serious a character that it took the defendant some three weeks to pump out the water from his mine,—some three weeks to clear the mining operations of the water; and he alleges that so far as he is concerned, he has not done any injury to the plaintiff. He brings to you the deposits of mud or soil, or whatever it may have been testified to be, which he says he found in these various dams; and he says that an analysis of these different muds or deposits shows that they do not come from his property; and that they are not of the same nature as the soil of his property.

Now, all these things are brought to your attention for the purpose of showing that, while true it may be that deposits were thrown into the different dams of the plaintiff, he, the defend-

ant, was not the cause of it, and that therefore he is not respon-
sible for that; and if you should find that he is responsible for
some of the deposits, you will ascertain that quantity,—natu-
rally, the water in a creek of that kind will carry down sand,
leaves, dirt, and other stuff; dams will gradually fill up; freshets
may do that; and my object in directing your attention to these
facts is simply to show to you that you must apportion the dam-
ages; and you can only hold the defendant responsible simply
for what he may have done, and not for what may have been done
by others, or by the act of nature, or great freshets, or heavy
rains that may have washed soil into that creek.

If the testimony satisfies you that there was no diversion of
water by the defendant, no deposit of mud, no injury to the lower
owner caused by his act, then he would be entitled to a verdict.
But if you find that he has done an injury to the lower owner,
that he has diverted the stream and failed to return it in proper
quantity and pure in quality as he ought to have done, and that
injury has resulted to the plaintiff, then you must return a ver-
dict for the plaintiff, and assess the damages as indicated in the
charge.

Verdict and judgment were for the plaintiff for $225.66.

The assignments of error specified the admission of the record
of the former suit, the answers of the court to the points sub-
mitted, and the portion of the charge inclosed in brackets.

*Ermentrout & Ruhl,* for plaintiff in error.—The declaration
and evidence admitted by the court at the latter trial show con-
clusively that the merits of the controversies at the several trials
were quite different.

In the former suit the gravamen of the complaint was that
"the defendant had diverted the water of the stream, and had
used it for washing iron ore upon his premises, whereby it was
made muddy, impure, corrupt, and poisonous, and that he did
return the same into the stream," etc.; and also that "he did,
then and there, empty and discharge other water pumped or
drawn from the ore workings and mines, and likewise rendered
muddy, impure, corrupt, and poisonous, etc., whereby all the
water of the stream became muddy, corrupt, poisonous," etc.

The declaration in the present suit contains an averment of
the former suit, and the verdict and judgment thereon; and fur-

ther avers that since the 10th day of September, 1877 (the date of the bringing of the former suit), the defendant continued the tortious acts complained of in the former suit. The plaintiff does not, however, aver that he was in possession of the tannery premises at the time of bringing this suit, but avers that since 1883 he did not have the possession of it, and declares for damages sustained in his reversionary interest since that time. The declaration in the present suit contains no averment that the defendant in the same way, and to the same extent, continued all the tortious acts complained of in the former one.

The admissibility of the record, in the first instance, was a question for the court to pass upon; and the plaintiff not having averred that the injuries complained of were continued to the same extent, it should have been rejected.

In Casebeer v. Mowry, 55 Pa. 423, 93 Am. Dec. 766, which was a second action on the case for flooding plaintiff's land, by means of a dam which the defendant had erected in a stream, the court said that the effect of the first action was to establish the right, and adds: "Of course, this is only so if the dam was of the same height when the second suit was brought. That it was so we may infer from the fact that nothing was alleged to the contrary."

In the former action the plaintiff claimed damages sustained in his business of tanning, which he averred he had been and was then exercising and carrying on; while in this action he declares for injuries sustained in his reversionary interest. He, therefore, is now suing in a different right.

Damages for injuries to property vary also, according to the nature of the claimant's right. The owner of the freehold may undoubtedly recover for an injury which permanently affects or depreciates his property; while a tenant, or one having only a possessory right, may recover for an injury to his use or enjoyment of it. Seely v. Alden, 61 Pa. 305, 100 Am. Dec. 642; Ripka v. Sergeant, 7 Watts & S. 9, 42 Am. Dec. 214; Williams v. Esling, 4 Pa. 486, 45 Am. Dec. 710.

Where the verdict and judgment in a former trial between the same parties are used in pleading as a technical estoppel, or relied upon by way of evidence as conclusive *per se,* it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined,—that is, if the record of the former trial shows that the

verdict could not have been rendered without deciding the particular matter, it will be considered to have settled that matter as to all future actions between the parties; and further, in cases in which the record itself does not show that the matter was necessarily and directly found by the jury, evidence *aliunde* consistent with the record may be received to prove the fact; but even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be conclusive.    Washington A. & G. Steam Packet Co. v. Sickles, 5 Wall. 592, 18 L. ed. 553; Coleman's Appeal, 62 Pa. 272.

Assuming, however, for the sake of the argument, that the court ruled correctly in admitting the offer, we submit that there is serious error in the answers to the several points of the plaintiff below as to the effect of the evidence, especially in view of the evidence admitted relating to the water pumped from the defendant's mines, and the instructions to the jury as to the right of the plaintiff to recover for injuries resulting therefrom.    In both actions the plaintiff's chief complaint was the alleged injury resulting to him by reason of the water raised or pumped from defendant's mines.    The learned judge, however, held that all injuries resulting from such acts were within the ruling of this court in Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, 57 Am. Rep. 445, 6 Atl. 453, and therefore *damnum absque injuria*.

At the former trial the defendant was held liable for such injuries.    How can it then be said that the cause of action is the same in this as in the former action ?    The use made of the water by Long is inseparable to and necessary for the use of his land; it has a necessary relation to his use of this land, and therefore is within the rulings of this court upon that question. Pennsylvania R. Co. v. Miller, 112 Pa. 34, 3 Atl. 780.

In the case of Kauffman v. Griesemer, 26 Pa. 407, 67 Am. Dec. 437, it was held that the owner of the superior heritage may improve his lands by agricultural or mining operations, although thereby the quantity of water discharged upon the inferior owner is changed.    This is said to occur when necessary for carrying on agricultural and mining operations.    By a parity of reasoning the same rule should include a necessary alteration in the quality of the water.

The reasonableness of the detention of water by the riparian owner above to the injury of the riparian owner below depending, as it must, on the nature and size of the stream as well as the business to which it is subservient, and on the ever-varying circumstances of each particular case, must be determined by the jury and not by the court. Hetrich v. Deachler, 6 Pa. 32; Hartzall v. Sill, 12 Pa. 248; Cooley, Torts, 588.

The damages resulting to another from the natural and lawful use of his land by the owner thereof are, in the absence of malice, *damnum absque injuria.* When the maxim, *Sic utere tuo ut alienum non lædes,* is applied to landed property the plaintiff must show, not only that he has sustained damage, but that the defendant has caused it by going beyond what is necessary in order to enable him to have the natural use of his own land. West Cumberland Iron & Steel Co. v. Kenyon, L. R. 11 Ch. Div. 783.

The reasonableness of the use of a stream by the upper riparian owner is a question of fact, to determine which testimony showing the uniform usage of the country is admissible. Snow v. Parsons, 28 Vt. 459, 67 Am. Dec. 723.

The court will refuse to enjoin the burning of bricks, because it is essential to brick making, which the court regarded as a useful and necessary business and necessarily exercised near towns. Huckenstine's Appeal, 70 Pa. 102, 10 Am. Rep. 669.

The water used in the mining operations below was returned to the stream in as clear and pure a condition as the nature of the operations upon the land would permit. The depreciation in quantity was equal only to the extent of the evaporations while it was permitted to remain in the mud or slush dam for the purpose of clarification. No substances foreign and not indigenous to the defendant's land was introduced into the water to foul it, as was proven in Wheatley v. Chrisman, 24 Pa. 298, 64 Am. Dec. 657, and McCallum v. Germantown Water Co. 54 Pa. 40, 93 Am. Dec. 656.

The defendant carried on his mining operations according to the customary and usual methods employed by skilful and experienced miners. It was a custom of which the court was bound to take notice as a part of the law. Koons v. Miller, 3 Watts & S. 271; Watt v. Hoch, 25 Pa. 411.

*H. Maltzberger* and *A. G. Green,* for defendant in error.—

It is charged that in the declaration in the first suit plaintiff avers possession in the tannery and claims damages to his possession; while in the latter he avers the possession to be in his tenant and claims damages to his reversionary estate. The answer is that we complain of the defendant's tortious acts; that they are still continued, and that they cause the same injury to the property affected as they did before; and as the suit extended back six years, so far as the plaintiff had possession during that time,—which was a little over four years, the suit having been brought in January, 1885,—he would be entitled to recover; and the evidence of the record of the former action would be confessedly appropriate and admissible. Kilheffer v. Herr, 17 Serg. & R. 319, 17 Am. Dec. 658; Smith v. Elliott, 9 Pa. 346; Rockwell v. Langley, 19 Pa. 502; Casebeer v. Mowry, 55 Pa. 419, 93 Am. Dec. 766; Coleman's Appeal, 62 Pa. 272.

In view of the continuance of the defendant's wrongful acts, the court was justified in instructing the jury to give such damages as would deter the defendant, although the amount should exceed the actual damage done. 3 Bl. Com. 220; Sedgw. Damages, 6th ed. 162; Williams v. Esling, 4 Pa. 486–490, 45 Am. Dec. 710; Wheatley v. Chrisman, 24 Pa. 298–302, 64 Am. Dec. 657.

There was competent evidence to go to the jury of wrongful abstraction, diminution, and corruption of the water, which clearly negatived the fact of a reasonable and proper use on the part of the defendant.

If the jury can apportion the damages occasioned by different tort feasors (Seely v. Alden, 61 Pa. 302, 100 Am. Dec. 642) they might approximate the damages from different causes. If both lawful and unlawful acts contribute to foul the water and bring sediment into a dam, it is easy to see that while the lawful cause might require twenty years to fill it, in combination with other unlawful acts it might be filled in less than five.

The principle of Wheatley v. Chrisman, 24 Pa. 298, 64 Am. Dec. 657, that "a proprietor of land over which a stream of water runs has, as against a lower proprietor, the use of only so much of the stream as will not materially diminish its quantity," is not yet obliterated from our law books.

PER CURIAM:

The judgment in the former case was substantially for the

diversion of the water of the same stream. It settled conclusively that the defendant below had no right to so divert it. If some other items of damage were considered in that case, it bears only on the measure of damages in this action. It does not open anew the question of right to so divert the water. The points submitted were correctly answered, and the evidence was fairly submitted.

Judgment affirmed.